# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT D. POLZER, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 19-57 |
| | ) | |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| DEREK OBERLANDER, *Superintendent of* | ) | Re: ECF No. 3 |
| *SCI-Forest,* JOSH SHAPIRO, *The Attorney* | ) | |
| *General of the State of Pennsylvania,* | ) | |
| STEPHEN A. ZAPPALA, *District Attorney of* | ) | |
| *Allegheny County,* | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

For the reasons that follow, the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 3, will be denied.[1]  A certificate of appealability likewise will be denied.

## II.  BACKGROUND

In the Petition, Petitioner seeks federal habeas relief from his 2010 convictions in the Court of Common Pleas of Allegheny County, Pennsylvania, of the following crimes:

- Rape by Forceable Compulsion, in violation of 18 Pa. C.S.A. § 3121(a)(1); and

- False Imprisonment, in violation of 18 Pa. C.S.A. § 2903(a).[2]

---

[1] The Parties consented to the jurisdiction of a United States Magistrate Judge on April 28, 2020. ECF Nos. 7 and 18.

[2] Petitioner was charged with additional crimes, and went to trial on them.  The Superior Court describes their disposition as follows in its Memorandum denying Petitioner's direct appeal.

> Appellant proceeded to a jury trial on April 29, 2010. While testifying, appellant stabbed himself several times in the neck with

(continued . . .)

ECF No. 3 at 1; see also Docket, Com. v. Polzer, No. CP-02-CR-13546-2008 (C.C.P. Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumb er=CP-02-CR-0013546-2008&dnh=P5SUAjVBgPAxkLXjHRvAVg%3D%3D (last visited Nov. 5, 2025)).

### A.    Relevant Factual Background

The relevant facts underlying Petitioner's crimes were recited by the Pennsylvania Superior Court in its first Memorandum affirming the denial of post-conviction relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq.

> This matter arises out of an assault on the victim which occurred at Defendant's apartment on the Northside of Pittsburgh on August 20, 2008. The victim, who was 23 years old at the time of trial, first met Defendant in March 2008. (T., p. 33) She testified that she was friends with Defendant and had been to Defendant's apartment on prior occasions. On the afternoon of August 19, 2008 she began watching a movie with Defendant at his apartment but they did not finish the movie and, therefore, the following day she called Defendant and asked if she could return to his apartment to finish watching the movie. (T., p. 35) The victim testified that she and

---

> a pen that resulted in a mistrial. Following the mistrial, appellant was committed for a psychiatric evaluation. Upon his release from commitment, the parties came before the Honorable John K. Reilly, Jr., who was sitting by special assignment in the Allegheny County Court of Common Pleas, entered the transcript of the prior jury trial into evidence, presented brief testimony, and sought a non-jury verdict. On December 20, 2010, Judge Reilly filed his opinion and verdict finding appellant guilty of rape, involuntary deviate sexual intercourse and false imprisonment. No verdict was entered on the charges of sexual assault and indecent assault as Judge Reilly determined these charges to be lesser included offenses of rape. Appellant was found not guilty of unlawful restraint and tampering with evidence. On January 5, 2011, Judge Reilly filed an amendment of the verdict noting that he had granted a defense motion for judgment of acquittal on involuntary deviate sexual intercourse, and therefore, vacated the guilty verdict previously entered on that charge.

Com. v. Polzer, No. 575 WDA 2011, 2013 WL 11254746, at *3 (Pa. Super. Ct. Sept. 18, 2013).

Defendant went into Defendant's bedroom to watch the movie while they were lying on Defendant's bed. (T., p. 36) As she was watching the movie she fell asleep, however, she later awakened to the sensation of a pulling on her right arm. (T., p. 37) When she opened her eyes she realized that Defendant was handcuffing her right hand to the bedpost. She asked Defendant what he was doing and asked him to stop. As she struggled with Defendant he then began taping her with duct tape around her mouth and head while straddling her. (T., p. 39) She testified that as Defendant straddled her that she bit him on his leg. The victim further testified that before Defendant was able to handcuff her left hand she reached into her pocket and dialed 911 on her cell phone. (T., p. 39) After she was handcuffed, Defendant took her pants and underwear off and told her he was going to get her pregnant. (T., p. 40-41) After she was restrained and her mouth was taped the victim testified:

> "He put his mouth on my vagina. He touched my breasts, he touched my whole body. He was just forcing himself on me."
> (T., p. 42)

She also testified that he then, "put his penis in my vagina and he began to have sex." (T., p. 43)

The victim also testified that Defendant hit her in the face. (T., p. 43) After completing the assault, Defendant took the tape off of the victim's mouth, removed the handcuffs and allowed the victim to leave the apartment. The victim told Defendant she would not tell anyone what happened but immediately upon leaving Defendant's apartment she called the police from her cell phone and was taken to Magee Hospital. (T., p. 48) The victim denied that she consented to being restrained or that the sexual relations with Defendant were consensual. (T., p. 49)

On cross examination the victim admitted that she had met Defendant months before the incident and that she had gone to various restaurants or bars with Defendant and had been to his apartment three or four times before the incident. (T., pp. 55-57) The victim, however, denied that they were boyfriend and girlfriend but acknowledged that at one time before the incident she had slept over [at] his apartment, even sleeping in the same bed. (T., p. 60) She testified, however, that she had never had sex with Defendant and that the intercourse and her restraint on the night of the incident were not consensual.

The Commonwealth presented the testimony of Detective Aprill-Noelle Campbell. Detective Campbell testified that she responded to the dispatch of the assault and located the victim on Terman

Avenue, near Defendant's apartment. (T., p. 128) She indicated the victim appeared confused and scared and Detective Campbell noted red marks on both of her wrists and residue of the duct tape on her face which was red and inflamed. (T., pp. 129-130)

The Commonwealth called Deborah Ann Shane, a sexual assault nurse examiner with the Sexual Assault Response Team for Allegheny County, who examined the victim on August 20, 2008 at Magee Women's Hospital. (T., p. 156) She noted that the victim appeared to be very upset. She found duct tape residue in the victim's hair and on the back of her head and around her mouth. The victim's lips were red and swollen. (T., p. 159) She also noted and photographed abrasions and broken skin on the victim's wrists, arms, legs, buttocks and thighs, as well as ligature marks on her wrist. (T., p. 160-167) She did not note any injuries to the vagina or cervix. (T., p. 167) The victim's medical records were also entered into evidence. (T., p. 151)

The Commonwealth called Detective Gregory Boss. Detective Boss testified that he went to Defendant's residence on August 20, 2008 at 8:14 p.m. at which time Defendant was present and consented to a search of his apartment and an interview, which was conducted at police headquarters. (T., pp. 180-183) Defendant admitted that while the victim was sleeping in his apartment he began taking her pants off and she initially made a comment "not now", but then they had consensual sex. (T., 191) Defendant ultimately admitted using a belt to restrain the victim and using tape, but denied using handcuffs on the victim. (T., 195) Defendant also denied being bitten on the leg by the victim, however, when asked to show his legs Detective Boss noted the bite mark on Defendant's leg, near his knee. (T., pp. 196-197) Defendant's taped interview was offered into evidence. (T., p. 199) The Commonwealth also entered into evidence the recording of the 911 call that was initiated by the victim during the assault as well as her call to 911 after the assault. (T., pp. 113, 117)

The Commonwealth also called Detective Daniel Honan who read a letter sent by Defendant to the victim on or about December 9, 2008. (T, pp. 221-230) The long letter included Defendant's statement that:

> "There is really no excuse for what I did to you. The whole entire situation feels like a nightmare to me. I cannot believe I forced myself on to you. I feel so ashamed of myself." (T., p. 227)

In the letter, Defendant repeatedly expressed regret for the "awful" things he did to the victim, but also asked the victim to testify that the sexual intercourse and bondage was consensual. (T., p. 227)

In his defense, Defendant testified that he met the victim in February 2008. He testified they were friends and that he wanted a more involved relationship, but also acknowledged they never had sexual relations during that time. (T., p. 249, 257) Defendant claimed that on the night before the assault, the victim called him and informed him she wanted to have sex. (T., p. 263) Defendant admitted restraining the victim and having intercourse with her, asserting:

> "I told her, you know, I wanted to, you know, do like S&M type of bondage stuff with her, sex play, and she was kind of cool with it." (T., p. 278)

He denied that any of the conduct was non-consensual or that the victim ever asked him to stop. (T., p. 279) He testified that after having sex that they spoke for approximately a half hour before she left. (T., p. 235) He acknowledged that he did put the handcuffs in a trash bag. (T., p. 289) Finally, he acknowledged writing the letter, essentially stating that although at the time the sex was consensual that he now "wanted her to know that I sympathize and empathize with her." (T., 293)

Com. v. Polzer, No. 298 WDA 2015, 2016 WL 4719982, at *1–3 (Pa. Super. Ct. June 22, 2016) (factual recitation adopted by the Superior Court in its second Memorandum affirming the denial of PCRA relief. See Com. v. Polzer, No. 298 WDA 2015, 2018 WL 5317647 (Pa. Super. Ct. Oct. 29, 2018)).

On March 2, 2011, Petitioner was sentenced to a term of 10 to 20 years of imprisonment for his Rape conviction, followed by a consecutive term of 6 to 12 months imprisonment for his conviction for False Imprisonment. ECF No. 3 at 1; Polzer, 2013 WL 11254746, at *3; ECF No. 10-1 at 34-39. As part of his sentence, Petitioner was required to register as a sex offender for the rest of his life. ECF No. 10-1 at 34.

B.      **Relevant Procedural History**

Petitioner timely filed a direct appeal, raising a single claim.

> I. Did the trial court err when it denied Defendant's Motion for Judgment of Acquittal pursuant to Pa.R.Crim.P. 606 wherein the Commonwealth failed to prove beyond a reasonable doubt that the encounter between Appellant and the victim was not consensual?

Polzer, 2013 WL 11254746, at *3.  The Superior Court affirmed his conviction and sentence on September 18, 2013.  Id. at *1.  Petitioner did not file a petition for allowance to appeal in the Pennsylvania Supreme Court or a petition for writ of *certiorari* with the United States Supreme Court.  As a result, his conviction and sentence became final on October 18, 2013. Pa. R.A.P. 903.

Petitioner filed an initial *pro se* PCRA petition on April 19, 2013.  ECF No. 10-1 at 53. That was dismissed without prejudice due to his pending direct appeal.  Id. at 54.  After his direct appeal was concluded, Petitioner filed another *pro se* PCRA petition on August 8, 2014.  Id. at 122, 133.[3]  Counsel was appointed, who filed a Motion for Leave to Withdraw as Counsel under Turner and Finley on October 24, 2014.  Id. at 138.  The PCRA trial court allowed counsel to withdraw, and issued notice of its intent to dismiss the PCRA petition without a hearing on November 18, 2014.  Id. at 183. Petitioner filed a response thereto and amended *pro se* PCRA petition on December 8, 2014.  Id. at 187.  One week later, on December 15, 2014, the PCRA trial court dismissed the petition.  Id. at 198.

Petitioner timely filed a notice of appeal on January 15, 2015.  See Docket, Polzer, No. 298 WDA 2015 (Pa. Super. Ct.) (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?do

---

[3] This *pro se* PCRA petition was stamped by the trial court as received on August 13, 2014.  Id. at 122.  However, the *pro se* PCRA petition was dated August 8, 2014.  Id. at 133.  Because Pennsylvania applies the so-called "prisoner mailbox rule" to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), the effective date of filing appears to be August 8, 2014.

cketNumber=298%20WDA%202015&dnh=8XocD%2FK3t%2F4nVgdI9SXLdQ%3D%3D (last visited Nov. 5, 2025)).[4]  The PCRA trial court issued its Opinion on July 15, 2015.  ECF No. 10-1 at 206.  See also  Pa. R.A.P. 1925(a).   On June 22, 2016, the Superior Court issued a Memorandum affirming the denial of post-conviction relief, addressing the following claims, which were presented in Petitioner's appeal brief.

> A. Did the PCRA Court err in its decision dismissing Appellant's PCRA petition without a hearing where:
>
> I. The trial court erred in excluding statements of an unavailable declarant as an exception to the hearsay rule?; and on
>
> II. Whether the trial court erred on its defense motion sequestration order that allowed the lead case detective to conform her testimony to that of the complainant?;
>
> III. Whether trial counsel was ineffective in failing to cross-examine Detective Campbell concerning her prior inconsistent statements?;
>
> IV. Whether trial counsel was ineffective in failing to secure an available witness who was willing to testify on Appellant's behalf?;
>
> V. Whether the sentencing court imposed an illegal sentence in violation of the Ex Post Facto Clause by invoking the "two strikes" mandatory minimum sentencing provision of 42 Pa.C.S.A. § 9714(a)(1), where the repeal of subsections (b) and (c) made the statute more harsh and punitive, subjecting Appellant to a greater punishment that took away the discretionary aspects of sentencing contrary to legislatures intent of Section 9714?;
>
> VI. Whether the sentencing court imposed an illegal sentence, as to whether the mandatory minimum sentence provisions under Section 9714 (a)(1) constitute an illegal sentence pursuant to the United States Supreme Court's decision in Alleyne?;
>
> VII. Whether the sentencing court imposed an illegal sentence in violation of the Sixth Amendment to the U.S. Const. by invoking the mandatory minimum sentencing provision of Section 9714,

---

[4] The Superior Court determined that the appeal was timely filed pursuant to the prisoner mailbox rule.  Polzer, 2016 WL 4719982, at *3.

> where such determination was not found by a jury and proved beyond a reasonable doubt ?;
>
> VIII. Whether Section 9714 imposes new legal burdens of past transaction or occurrence and changes the punishment for the predicate offense in violation of the Fourteenth and Sixth Amendments?;
>
> IX. Whether SORNA's registration and verification requirements under 42 Pa.C.S.A. § 9799.15(e)(3) violate the due process clause of the Fourteenth Amendment, and the prohibition of the Ex Post Facto Clause to the U.S. Constitution, where Appellant has not been designated a sexually violent predator to warrant quarterly verification?

Polzer, 2016 WL 4719982, at *3-4.

Petitioner timely sought leave to file an appeal from the Pennsylvania Supreme Court. See Docket, Com. v. Polzer, No. 457 WAL 2016 (Pa.) (available at https://ujsportal.pacourts.us/Report/PacDocketSheet?docketNumber=457%20WAL%202016&dnh=f%2FoB8mH8CfNOI4xzJBovbw%3D%3D (last visited Nov. 5, 2025)). On February 23, 2018, the Pennsylvania Supreme Court granted *allocatur* on the following, single issue, and remanded the case to the Superior Court.

> Whether the appellate Superior Court erred in its findings and conclusions, and the PCRA court committed legal error in denying Petitioner's claim that the Sex Offender Registration and Notification Act (SORNA) under 42 Pa.C.S.A. § 9799, i.e., §§ 9799.15(e) and (e)(3) violate the due process clause of the Fifth and the Fourteenth Amendments to the United States Constitution, and the due process rights under the Pennsylvania Constitution, Art. 1, § 1, and Art. 1, § 9, and, therefore, violate the prohibition of the Ex Post Facto Clauses to the United States Constitution, Art. 1, § 10, Clause 1, and the Pennsylvania Constitution, Art. 1, § 17, where Petitioner is clearly not designated as a Sexually Violent Predator (SVP) to justify and warrant such progressively rigid conditions and "quarterly in-person" reporting requirements previously subject only to those deemed an SVP, whereas, SORNA'S irrebuttable presumption that all sexual offenders pose a high risk of reoffending violates procedural and substantive due process under the Pennsylvania Constitution, and as such, SORNA's Internet notification provision and quarterly verification requirements constitute an ex post facto law under the Pennsylvania Constitution?

8

Com. v. Polzer, 182 A.3d 431-32 (Pa. 2018) (Table).[5]  *Allocatur* was denied in all other respects.

Id. at 432.

The Superior Court in turn remanded the case to the PCRA trial court for the appointment

of counsel to represent Petitioner in the Superior Court.  Com. v. Polzer, No. 298 WDA 2015,

2018 WL 1441888, at *2 (Pa. Super. Ct. Mar. 23, 2018).[6]  Counsel was appointed to represent

Petitioner in the Superior Court on March 26, 2018.  ECF No. 10-2 at 108.  On October 29, 2018,

the Superior Court reversed the PCRA trial court as to the single issue remanded to it, and ordered

that the registration requirements imposed on Petitioner at the time of his sentencing be reinstated.

Polzer, 2018 WL 5317647, at *1.

The record does not indicate that any party sought leave to appeal this order from the

Pennsylvania Supreme Court.

## III.  FEDERAL HABEAS PETITION

The instant federal habeas case was initiated with receipt of the Petition on January 18,

2019.  ECF No. 1.  Petitioner raise the following grounds for relief therein.

> GROUND ONE:  Ineffective assistance of trial counsel in violation of the Sixth Amendment to the U.S. Constitution in failing to secure an available witness by compulsory process to testify on Petitioner's behalf.
>
> Supporting facts[:]
>
> In the instant matter, evidence of record shows that trial counsel had subpoenaed the witness who was willing to testify on Petitioner's behalf and would have been capable of impeaching the credibility of the complainant, however, had no means to get to the Courthouse.

---

[5] Though it is not necessarily apparent from its language alone, this issue dealt with heightened sex offender registration requirements to which Petitioner was subjected due to Pennsylvania's passage of "SORNA 1" in December, 2011 – after Petitioner already had been convicted and sentenced.  See Polzer, 2018 WL 5317647, at *3.

[6] The record indicates that Petitioner filed a motion for reconsideration with the Pennsylvania Supreme Court on March 9, 2018, and that this was denied on April 12, 2018.  ECF No. 10-2 at 94-102.

Trial counsel made a proffer to the court of proposed testimony, but failed to seek compulsory process to attain the witness's presence by Sheriff transportation. See Non-Jury Trial Transcripts pp. 22-24 (Docket Entry 48).

GROUND TWO:    The repeal of PA statute 42 PA C.S.A. §§ 9714(b), (c)(1)–(c)(5) in 2000 constituted a violation of Petitioner's due process rights and is an ex post facto law.

Supporting facts[:]

As Petitioner was sentenced under 42 PA C.S.A. § 9714(a) (Sentences for Second and Subsequent Offenses) to a mandatory minimum sentence of ten years imprisonment, in which as a consequence of the amended repeal of the statute' subsections concerning its presumption provisions of a high risk dangerous offender, the statute has been made more harsh and punitive, and subjected Petitioner to greater punishment in contrast to legislative intent when the law was enacted that allowed a mandatory minimum sentence of five years imprisonment if the presumption was successfully rebutted, thereby giving the statute a judicial discretionary aspect to sentencing that was subsequently removed upon repeal of the statute and created an irrebuttable presumption cloaked in disguise within the statute that automatically mandates a minimum sentence of ten years imprisonment, and violates procedural and substantive due process rights of Petitioner.

GROUND THREE:    The ongoing validity of the Almendarez-Torrez exception to trial by jury for establishing "the fact of a prior conviction" at sentencing violates the Fifth and Sixth Amendments to the U.S. Constitution.

Supporting facts[:]

The mandatory minimum sentence provided in 42 PA.C.S.A. § 9714 is unconstitutional in light of Alleyne v. United States, where the reported prior conviction was not charged in the indictment, nor was such material fact found by a jury and proved beyond a reasonable doubt, in a separate hearing, as rather than by a mere preponderance of the evidence at sentencing.

The U.S. Supreme Court held that "any fact" that increases the minimum sentence for a crime is an element of the offense, and not a sentencing factor, and must be submitted to the jury for proof beyond a reasonable doubt. Alleyne v. United States, 133 S.Ct. 2151, 2160-2162 (2013); See Rangel-Reyes v. United States, 547 U.S. 1200, 910-912 (2006) (Justice Thomas, dissenting)

ECF No. 3 at 6, 9, and 11-12.

Respondents answered the Petition on April 18, 2019.  ECF No. 10.  Petitioner submitted three motions for extension of time to traverse the Answer.  ECF Nos. 20, 22, and 24.  In his latest, received on October 6, 2020, Petitioner alleged that he anticipated being transferred to another prison within a few weeks, pending COVID-19 test results, and he needed 60 days to respond. ECF No. 24 at 2-3.  Accordingly, on October 7, 2020, this Court stayed and administratively closed this case, and directed Petitioner to file notice when he had been transferred and had received his legal materials.  ECF No. 25.

On June 1, 2022, having received no further response from Petitioner, this Court directed him to show good cause why this case should not be dismissed due to his failure to prosecute.  ECF No. 28.  Petitioner sought an extension of time to respond thereto, which was granted on June 30, 2022.  Petitioner ultimately did not respond to the show cause order, and this case was reopened on October 7, 2022.  ECF No. 24.  Petitioner was given until December 7, 2022 to file a traverse, but he never did so.  ECF No. 34.

This case is ripe for disposition.

## IV.     AEDPA PROCEDURAL REQUIREMENTS

Before this Court addresses the merits of Petitioner's federal habeas claims, it will address whether the Petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### A.     The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254.  The applicable portion of the statute is as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine

whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No. 99-5, 2004 WL 825858, at *3 (W.D. Pa. Mar. 10, 2004)).

In the instant case, Respondents concede that Petitioner's claims were timely filed. ECF No. 10 at 14. A review of the record, as set forth above, supports this conclusion. The Court finds that Petitioner's claims are timely.

**B.      Exhaustion and Procedural Default**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.

To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). To fairly present a claim, "[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts." Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1231 (3d Cir. 1992).

Moreover, a petitioner must present every claim raised in the federal habeas petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell,

387 F.3d 210, 234 (3d Cir. 2004). A petitioner shall not be deemed to have exhausted state remedies if she has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the case at bar, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. In turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Garcia v. Adams, No. 17-CV-5249, 2019

WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), report and recommendation adopted, 2020 WL 868200 (E.D. Pa. Feb. 20, 2020), aff'd sub nom. Garcia v. Sup't Forest SCI, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases). Additionally, waiver due to a petitioner's failure to recite a claim in a "statement of questions" section in a state court appeal brief has been held to be independent and adequate ground for procedural default Stringer v. Folino, No. 13-221, 2016 WL 836347, at *13-14 and n.16 (W.D. Pa. Feb. 1, 2016) (citing Pa. R.A.P 2116(a)), report and recommendation adopted, 2016 WL 826016 (W.D. Pa. Mar. 3, 2016).

Here, Respondents concede that Petitioner's claims have been exhausted and are not procedurally defaulted. ECF No. 10 at 15, 20, and 25. Except as set forth in footnote 7 below, this Court agrees. Accordingly, the undersigned will reach the merits of each of Petitioner's asserted grounds for relief.

## V.    MERITS ANALYSIS OF HABEAS CLAIMS

### A.    Standard of Review

The AEDPA provides the applicable deferential standard by which a federal habeas court must review the state court's disposition of a claim raised in a federal habeas petition. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in Section 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of . . . clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome by Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Lambert, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-

finding." Id. at 236 n.19.  If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence.  See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

It is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  Ross v. Att'y Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions.  Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied.  We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, No. 07-CV-00021, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added).  Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

To the extent that a claim was fairly presented to the state courts but was not addressed on the merits, *de novo* review applies.  Cone v. Bell, 556 U.S. 449, 472 (2009).  The same review

applies to a claim that resulted from a state court decision that was contrary to or an unreasonable

application of United States Supreme Court precedent and/or an unreasonable determination of the

facts. 28 U.S.C. § 2254(d)(1) and (2).

**B.      Ground One Will Be Denied.**

At Ground One, Petitioner asserts the following.

GROUND ONE:      Ineffective assistance of trial counsel in violation of the Sixth Amendment to the U.S. Constitution in failing to secure an available witness by compulsory process to testify on Petitioner's behalf.

Supporting facts[:]

In the instant matter, evidence of record shows that trial counsel had subpoenaed the witness who was willing to testify on Petitioner's behalf and would have been capable of impeaching the credibility of the complainant, however, had no means to get to the Courthouse. Trial counsel made a proffer to the court of proposed testimony, but failed to seek compulsory process to attain the witness's presence by Sheriff transportation. See Non-Jury Trial Transcripts pp. 22-24 (Docket Entry 48).

ECF No. 3 at 6.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to

a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington,

466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining

whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was

unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense.

Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected

from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the

facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her

attorney's representation fell below an objective standard of reasonableness by committing errors

18

so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id. Petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687).

The second prong requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

In considering a claim of ineffectiveness of counsel, Pennsylvania uses a three-part effectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL 18536146, at *1 (3d Cir. Dec. 6, 2022). The United States Court of Appeals for the Third Circuit

has found this test not to be contrary to <u>Strickland</u>. <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000).

Here, the Superior Court adopted the PCRA trial court's analysis of this claim, and the PCRA trial court applied Pennsylvania's three-part test to Petitioner's claim of ineffective assistance of counsel in his PCRA appeal. <u>Polzer</u>, 2016 WL 4719982, at *5 and 9-10. Accordingly, the Superior Court's analysis was not contrary to <u>Strickland</u>.

The PCRA trial court's reasoning as to this claim is as follows.

> Petitioner next claims that counsel was ineffective in failing to secure a witness, Wendy Palchek, to impeach the credibility of the victim. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the petitioner must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on petitioner's behalf; and (5) that the absence of the testimony prejudiced the petitioner. <u>Commonwealth v. Brown</u>, 767 A.2d 576, 581-82 (Pa. Super. 2001) Petitioner testified at trial concerning his interaction between the proposed witness and the victim which allegedly occurred in the early morning hours of August 20, the day of the assault. (T., pp. 265-266) Petitioner asserts that the witness would have contradicted the victim's testimony about whether or not she spent the night with Petitioner. However, as noted above the Petitioner's own letter to the victim confirmed that she had not stayed the night and returned the following day, In addition, Petitioner's testimony at trial indicated that proposed witness, Wendy, spent only a few minutes in the car with the victim as Petitioner drove Wendy home. Any alleged failure to call the witness at trial did not prejudice Petitioner in light of the overwhelming evidence against Petitioner. In addition, Petitioner has failed to demonstrate that the witness was available and that the witness was prepared to cooperate and testify on his behalf. Therefore, there is no merit to this claim.

<u>Polzer</u>, 2016 WL 4719982, at *10. <u>See also</u> Trial Tr. dated Apr. 28-29, 2010, at 265-66. <u>See also</u> Nonjury Trial Tr., dated Dec. 1, 2010, at 22-25 (offer of proof of testimony of Wendy Palchek).

The Third Circuit disfavors the five-factor test applied above – specifically with respect to the witness' willingness to cooperate.

> As we have said before, and reiterate once again, "[a]bsent extenuating circumstances, such as the existence of a privilege or the witness's incapacity or death, whether a witness is ready and willing to testify is irrelevant since defense counsel can compel testimony through a trial subpoena."
>
> ***
>
> Unwilling witnesses can be *made* to testify.

Williams v. Sup't Mahanoy SCI, 45 F.4th 713, 720-21 (3d Cir. 2022) (emphasis in original).  But, as is clear from the above passage from the PCRA trial court's opinion, which was explicitly adopted by the Superior Court, its decision did not rest on the willingness prong, but on the prejudice prong as well.  That is not inconsistent with Strickland.  Further, the PCRA trial court's consideration of the "overwhelming evidence against Petitioner" was appropriate, as "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999).

A review of the record in this case does not indicate that the PCRA trial court's conclusion was otherwise contrary to, or an unreasonable application of the Strickland standard, or based on an unreasonable determination of the facts.   Indeed, Petitioner's letter to the victim, which referenced by the PCRA trial court and was read into the record in Petitioner's first trial, supports the PCRA trial court's analysis.  That letter stated, in relevant part:

> Before you called me that night, I had a friend of mine over to stay the night and watch movies with me, and she even turned me down for sex. But when you called, my world came alive. I so loved hearing your voice. But that night didn't go the way I wishing and hoping it would; *and the next day when you came back over my place* and again shot me down for sex, I felt completely dead inside. There's really no excuse for what I did to you. That whole entire situation feels like a nightmare to me. I cannot believe I forced myself into you.

Trial Tr. dated Apr. 28 and 29, at 224 (emphasis added).

Petitioner has failed to show that the PCRA trial court's decision was contrary to, or an unreasonable application of Strickland, or was based on an unreasonable determination of the facts. Therefore, federal habeas relief based on Ground One will be denied.

### C. Ground Two Will Be Denied.

Petitioner asserted the following basis for relief at Ground Two.

GROUND TWO:    The repeal of PA statute 42 PA C.S.A. §§ 9714(b), (c)(1)–(c)(5) in 2000 constituted a violation of Petitioner's due process rights and is an ex post facto law.

Supporting facts[:]

As Petitioner was sentenced under 42 PA C.S.A. § 9714(a) (Sentences for Second and Subsequent Offenses) to a mandatory minimum sentence of ten years imprisonment, in which as a consequence of the amended repeal of the statute' subsections concerning its presumption provisions of a high risk dangerous offender, the statute has been made more harsh and punitive, and subjected Petitioner to greater punishment in contrast to legislative intent when the law was enacted that allowed a mandatory minimum sentence of five years imprisonment if the presumption was successfully rebutted, thereby giving the statute a judicial discretionary aspect to sentencing that was subsequently removed upon repeal of the statute and created an irrebuttable presumption cloaked in disguise within the statute that automatically mandates a minimum sentence of ten years imprisonment, and violates procedural and substantive due process rights of Petitioner.

ECF No. 3 at 9.

As was aptly explained in the Answer, Petitioner was convicted of Involuntary Deviate Sexual Intercourse by Forceable Compulsion, in violation of 18 Pa. C.S.A. § 3123(a)(1), on October 1, 1996. ECF No. 10 at 23; see also Docket, Com. v. Polzer, No. CP-02-CR-2011-1996 (C.C.P. Allegheny Cnty.) (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?dock etNumber=CP-02-CR-0002011-1996&dnh=Xu3wOaibFNIakPQdsgy5Hg%3D%3D (last visited Nov. 5, 2025)). This prior conviction subjected Petitioner to a 10-year mandatory minimum

sentence under 42 Pa. C.S.A. § 9714 for his 2010 convictions as a second or subsequent offender. <u>See id.</u> at §§ 9714(a) and (g).

At the time that Petitioner committed his 1996 crime of Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Section 9714 was worded differently, and allowed a second or subsequent offender to rebut a presumptive a 10-year mandatory minimum sentence. Successfully rebutting the presumption under the earlier version of the statute subjected a second or subsequent offender to a five-year mandatory minimum sentence. 42 Pa. C.S.A. §§ 9714 (b) and (c) (deleted by Act No. 2000-113 (S.B. No. 844)).

However, in 2000, Section 9714 was amended to remove this possibility, subjecting second or successive offenders who – like Petitioner – had multiple convictions for crimes of violence to a mandatory minimum sentence of 10 years of imprisonment. 42 Pa. C.S.A. §§ 9714(a) and (g).

Put another way, Petitioner asserts that the 2000 amendment to Section 9714 resulted in an *ex post facto* sentence for his 2010 conviction of the crime of violence that he committed in 2008, because he committed his predicate crime of violence in 1996 – prior to the 2000 amendment. This violated his right to due process.[7]

---

[7] To the extent that Petitioner is attempting to raise a due process claim here that is separate from the *ex post facto* claim discussed herein, a review of his briefing in the PCRA trial court and before the Superior Court does not support the conclusion that such a claim was fairly presented to the state courts, and thus is now procedurally defaulted. Such a claim – as far as the undersigned can tell from the Petition – is based on the amendment resulting in an allegedly illegal sentence. ECF No. 3 at 10.

It is well established that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. <u>United States v. Ausburn</u>, 502 F.3d 313, 322 (3d Cir. 2007) (citing <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977) (plurality opinion)); <u>accord</u> <u>United States v. Mannino</u>, 212 F.3d 835, 845-46 (3d Cir. 2000). But, as a general rule, federal courts will not review state sentencing determinations that fall within statutory limits. <u>Solem v. Helm</u>, 463 U.S. 277, 290 (1983); <u>Jones v. Sup't of Rahway State Prison</u>, 725 F.2d 40, 42-43 (3d. Cir. 1984); (continued . . .)

The PCRA trial court, the opinion of which was adopted by the Superior Court, addressed this issue as follows.

> Petitioner next claims that the repeal of 42 Pa.C.S.A. § 9714(b),(c)(1) and (c)(2), dealing with the presumption of a defendant as a high-risk offender and establishing a procedure for a defendant to rebut the presumption, constituted an illegal *ex post facto* law. In *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 269-70 (2003) the Court stated:
>
> > A law may constitute a prohibited *ex post facto* provision in one of four ways: 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. *Commonwealth v. Young*, 536 Pa. 57, 637 A,2d 1313, 1317 (1993) (quoting *Colder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be

---

*see also* Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975).  Furthermore this court on habeas review cannot "overturn [a state court] sentence except where it is shown to be extraordinarily unfair and unjust," otherwise we must "treat the state sentencing decision with deference."  Thompson v. Lozum, 559 F. Supp. 2d 579, 587 (E.D. Pa. 2008) (citing Richmond v. Lewis, 506 U.S. 40, 50-51 (1992); Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

Petitioner's sentence 10 to 20 years for Rape, as a felony of the first degree, is within the statutory limits in place at the time that Petitioner committed his crime.  18 Pa. C.S.A. § 3121(a)(1); 18 Pa. C.S.A. § 1103; 42 Pa. C.S.A. § 9756 (West 2005) (amended 2008, 2009, and 2013).  His sentence for Rape therefore is facially valid.  To the extent that Petitioner argues that his minimum sentence is unfair because it was mandated by Section 9714 due to his 1996 conviction for IDSI, this Court is unpersuaded that it violates due process.  See Leary v. Kerestes, No. 10-5541, 2011 WL 5446839, at *5 (E.D. Pa. Apr. 19, 2011), report and recommendation adopted, 2011 WL 5446699 (E.D. Pa. Nov. 9, 2011) (finding no due process violation for a mandatory minimum sentence under Section 9714 triggered by a 32-year-old prior conviction.)  Thus, even under *de novo* review, any stand-alone due process claim attacking his sentence is meritless.

24

> retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (footnote omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.,* at 30, 101 S.Ct, 960. *Lehman v. Pennsylvania State Police,* 839 A.2d 265, 269-70 (2003)
>
> The amendments to 42 Pa.C.S.A. § 9714 were made in 2000 and clearly do not constitute an *ex post facto* law which entitles

Polzer, 2016 WL 4719982, at *10-11 (Pa. Super. Ct. June 22, 2016).

The *ex post facto* inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. See Weaver v. Graham, 450 U.S. 24, 29 (1981). To violate the *Ex Post Facto* Clause of the United States Constitution, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough. California Dep't of Corrs. v. Morales, 514 U.S. 499, 509, (1995). See also Hughes v. Sobina, No. 10-203, 2012 WL 3144467, at *11 (W.D. Pa. Aug. 2, 2012).

Petitioner has failed to show that the PCRA trial courts' conclusion was contrary to, or an unreasonable application of Supreme Court precedent, or was based on an unreasonable determination of the facts. "For purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant "offense" is the current crime, not the predicate crime." United States v. Arzate-Nunez, 18 F.3d 730, 734 (9th Cir. 1994); see also United States v. McCalla, 38 F.3d 675, 680 (3d Cir. 1994) (citing Gryger v. Burke, 334 U.S. 728, 732 (1948)).

Here, the amendment to Section 9714 at issue was promulgated on December 20, 2000, and became effective on February 19, 2001. Petitioner was sentenced on March 2, 2011, to a mandatory minimum of 10 years, to a maximum of 20 years, of imprisonment for a rape that he committed in 2008. Petitioner's sentence did not have an *ex post facto* effect in violation of his due process rights because the statute was already in effect when the acts giving rise to Petitioner's convictions were committed, and therefore it did not apply retroactively to Petitioner.

This ground for relief will be denied.

### D.    Ground Three Will Be Denied.

GROUND THREE:    The ongoing validity of the Almendarez-Torrez exception to trial by jury for establishing "the fact of a prior conviction" at sentencing violates the Fifth and Sixth Amendments to the U.S. Constitution.

Supporting facts[:]

The mandatory minimum sentence provided in 42 PA.C.S.A. § 9714 is unconstitutional in light of Alleyne v. United States, where the reported prior conviction was not charged in the indictment, nor was such material fact found by a jury and proved beyond a reasonable doubt, in a separate hearing, as rather than by a mere preponderance of the evidence at sentencing.

The U.S. Supreme Court held that "any fact" that increases the minimum sentence for a crime is an element of the offense, and not a sentencing factor, and must be submitted to the jury for proof beyond a reasonable doubt. Alleyne v. United States, 133 S.Ct. 2151, 2160-2162 (2013); See Rangel-Reyes v. United States, 547 U.S. 1200, 910-912 (2006) (Justice Thomas, dissenting)

ECF No. 3 at 11-12.

In Alleyne v. United States, the United States Supreme Court held that facts that increase a mandatory minimum sentence must be submitted to a jury and proven beyond a reasonable doubt. 570 U.S. 99, 116 (2013). This excludes the fact of a prior conviction, which the Court explicitly did not include in its holding. Id. at 111 n.1 (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)). The fact of Petitioner's prior conviction for Involuntary Deviate Sexual Intercourse

led to his 10-year mandatory minimum sentence under 42 Pa. C.S.A. § 9714(a). Polzer, 2016 WL 4719982, at *5.

Petitioner essentially would have this Court add to Alleyne by overruling Almendarez-Torres. This Court may not do so. See U.S. CONST Art. III § 1. Further, Sections 2254(d)(1) and (d)(2) are clear that:

> a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner does not cite, and the undersigned has been unable to locate, any decision of the United States Supreme Court overturning Almendarez-Torres. Further, there is no indication that the state court's determination was based on an unreasonable determination of the facts. Accordingly, this ground for relief must be denied.

### E.    Certificate of Appealability

A certificate of appealability will be denied, as jurists of reason would not debate that Petitioner has failed to show entitlement to relief. See also Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

VI.    **CONCLUSION**

For the foregoing reasons, the Petition, ECF No. 3, will be denied, and a certificate of appealability will be denied.

An appropriate Order follows.

Dated: November _____5_____, 2025                    BY THE COURT,

                                                     MAUREEN P. KELLY
                                                     UNITED STATES MAGISTRATE JUDGE

cc:    Robert D. Polzer
       KC-5409
       SCI Greene
       169 Progress Drive
       Waynesburg, PA 15370


       All counsel of record (*via* CM/ECF)